PHILLIP A. TALBERT
United States Attorney
BRITTANY M. GUNTER
Assistant United States Attorney
2500 Tulare Street, Suite 4401
Fresno, CA 93721
Telephone: (559) 497-4000
Facsimile: (559) 497-4099

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NO. 1:20-CR-00169-NODJ-BAM |
|---|---|
| Plaintiff, | UNITED STATES' SENTENCING MEMORANDUM AND RESPONSE TO DEFENDANT'S FORMAL OBJECTION TO RESTITUTION REQUESTS |
| v. | |
| ANDREW JAMES SARNOWSKI | |
| Defendant. | DATE: January 29, 2024<br>TIME: 9:00 a.m.<br>COURT: Hon. Dale A. Drozd |

The United States of America, by and through its undersigned counsel, respectfully requests that the Court sentence Andrew James Sarnowski ("the defendant") to a total of 480 months of imprisonment and 10 years of supervised release. The government agrees with Probation's finding in the Presentence Investigation Report ("PSR") that the defendant's total offense level is 43 with a criminal history category I. PSR ¶ 87. Accordingly, the government agrees the guideline term of imprisonment is 600 months, based on the statutory maximums for the offenses to which the defendant has pleaded guilty. PSR ¶ 87. However, consistent with the plea agreement, the government recommends that the Court sentence the defendant to 360 months of imprisonment for Count One and 120 months of imprisonment for Count Two, for a total of 480 months of imprisonment. ECF No. 37.

Further, the government requests that the court order a total of $49,000 in restitution based on the restitution requests submitted by known series victims from videos and images of child pornography that the defendant received in violation of 18 U.S.C. § 2252(a)(2).

UNITED STATES' SENTENCING MEMORANDUM     1

## I. APPLICABLE GUIDELINES CALCULATION

In the PSR, Probation applied a 5-level enhancement pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 4B1.5(b)(1) based upon a pattern of activity involving prohibited sexual conduct. PSR ¶ 42. The parties did not agree to the enhancement for pattern of activity as a stipulated enhancement in the plea agreement. ECF No. 37. The government honors and will continue to honor its plea agreement in not recommending the pattern of activity enhancement and maintains its recommendation of 480 months of imprisonment, consistent with the plea agreement. *Id.* Further, the 5-level enhancement has no impact on the guidelines calculation in this case because the total offense level, even without the 5-level enhancement, was already 43. Accordingly, the government requests that the Court find that the total offense level is 43; the criminal history category is I; and the guideline term of imprisonment is 600 months.

## II. A SENTENCE TO 40 YEARS OF PRISONMENT IS WARRANTED PURSUANT TO THE § 3553(A) FACTORS

In light of the sentencing factors provided in 18 U.S.C. § 3553(a), a sentence to 480 months—or 40 years—of imprisonment is appropriate in this case. This recommendation is amply justified by the defendant's egregious offense conduct, the need to provide just punishment, the need to protect the public, and the need to afford adequate deterrence. § 3553(a)(1), (a)(2).

**A. The Egregious Nature of the Offenses and the Need to Provide Just Punishment**

The defendant callously victimized an infant in his care and distributed videos of his sexual abuse of the infant to others on the internet. PSR ¶ 5, 7, 17. The defendant took advantage of the trust placed in him by others to care for the infant by instead choosing to record himself sexually abusing the infant. PSR ¶ 9, 14. He furthered the abuse of the infant by exposing the infant to narcotics by blowing smoke from what was believed to be a crack pipe into the infant's face. PSR ¶ 7, 17. Videos of the sexual exploitation and abuse of the infant were then shared to the internet. PSR ¶ 5. Law enforcement also discovered messages between the defendant and an unknown individual which showed the defendant describing and bragging about his sexual abuse of the infant. PSR ¶ 22. The infant is now a known series victim with the National Center for Missing and Exploited Children ("NCMEC") based on the defendant's videos of the sexual abuse, which are now likely forever on the internet.

In addition to the defendant's sexual abuse of the infant, the defendant was also found with over 900 videos and 2,300 images depicting child sexual abuse material ("CSAM"). PSR ¶ 23. The defendant's collection included videos and images of other individuals sexual abusing pre-pubescent minors and toddlers. PSR ¶ 16, 18. The defendant's collection of CSAM spanned multiple years, with his receipt of the CSAM dating back to as early as November 2017. PSR ¶ 23.

NCMEC reviewed the defendant's CSAM collection and identified numerous victims from known series. PSR ¶ 23, 25. Some of the victims from the known series that the defendant possessed have submitted victim impact statements highlighting the lasting trauma and negative effects they continue to experience as a result of the ongoing trafficking of the visual depictions of their abuse as young children. ECF No. 55-6. One victim wrote, "My images will probably always be circulating the internet, but this person is perpetuating this. This person chose to view the images of my abuse for their pleasure. By having done this they are allowing and encouraging more young victims to be groomed, they are normalizing the sexualization of children, and they are watching the abuse a non-consenting child had to suffer." *Id.* at 19. Another victim wrote, "I am hurt every time I hear about another criminal case that involves my images. With each criminal case that I hear about I know that many more copies of my images are spread about the internet; I know that there is a lesser and lesser chance that the horror I feel about people seeing me in this way will ever end." *Id.* at 26. A different victim wrote, "Everyday, people are trading and sharing videos of me as a little girl being raped in the most sadistic ways. They don't know me, but they have seen every part of me. They are being entertained by my shame and pain." *Id.* at 27. A guardian of one victim wrote, "[The victim] is a living-breathing child. She is not a nameless victim. To the person who seeks out this type of pornography I want to add that just viewing these pictures may not have physically harmed her, but it does not mean that no harm was done." *Id.* at 3-4.

Numerous children have been victimized by the defendant, including by his hands-on sexual abuse, as well as his receipt and distribution of images and videos depicting sexual abuse of other children. The sentence here needs to account for the seriousness of the defendant's actions. The long-term effects of his actions should also bear upon the need for just punishment. A 40-year term of imprisonment would reflect the nature of the defendant's serious crimes.

### B. The History and Characteristics of the Defendant, the Need to Deter Future Criminal Conduct, and the Need to Protect the Public

The defendant's history and characteristics weigh in favor of a 40-year sentence of imprisonment. Despite his lack of prior criminal history, the defendant's conduct has shown him to be a dangerous offender that has escalated from receiving and distributing videos and images of sexual abuse of children to producing videos of himself sexually abusing an infant. The conduct for which the defendant is being sentenced clearly demonstrates both that he is sexually attracted to children and that he poses a danger to them.

Although Sarnowski described a history of caring for family members with physical and mental health issues, as well as substance abuse issues, none of these circumstances excuse or explain his conduct. What is apparent is that Sarnowski made affirmative decisions to engage in conduct that demonstrates a significant lack of conscience and empathy. Sarnowski took affirmative steps to record his sexual abuse of an infant, as well as to receive and collect hundreds of images and videos of CSAM.

For these reasons, the sentence here should both deter him, and others, from engaging in future criminal conduct, and also protect the public. It is reasonable to conclude that, if given the opportunity, there is a strong likelihood that Sarnowski will recidivate due to his sexual attraction to minors. *See* H.R. Rep. No. 107-527 at 2 (2002) ("Studies have shown that sex offenders are four time more likely than other violent criminals to recommit their crimes."). Thus, in imposing a sentence for the creation and receipt of CSAM, the Court should send a message of deterrence, both to the defendant, with regard to his potential future conduct, and generally to all offenders with a sexual interest in children. An appropriately lengthy sentence of 40 years is necessary to deter the defendant, and other like-minded individuals, from repeating this criminal behavior, and to protect children from his actions.

### III. RESTITUTION

#### A. Applicable Legal Authority Regarding Restitution to be Awarded Against Those Convicted of Committing Child Pornography Offenses

"[T]he court shall order restitution" pursuant to convictions of crimes including those committed in violation of §§ 2251 and 2252. § 2259(a). "The order of restitution . . . shall direct the defendant to pay the victim (through the appropriate court mechanism) the full amount of the victim's losses." § 2259(b)(1). The issuance of a restitution order under § 2259 is indeed mandatory. § 2259(b)(4)(A).

The term "full amount of victim's losses" includes any costs incurred by the victim for:

(A) medical services relating to physical, psychiatric, or psychological care;

(B) physical and occupational therapy or rehabilitation;

(C) necessary transportation, temporary housing, and child care expenses;

(D) lost income;

(E) reasonably attorneys' fees, as well as other costs incurred; and

(F) any other losses incurred by the victim.

§ 2259(b)(3)(A)-(F).

Federal courts may order restitution to the extent authorized by statute. *United States v. Kennedy*, 643 F.3d 1251, 1260 (9th Cir. 2011) (*citing United States v. Gossi*, 608 F.3d 574, 577 (9th Cir. 2010)). Section 2259 is the statutory mechanism that allows for a restitution order regarding the known victims' restitution claims, and regarding those losses and other harms caused by the offenses of conviction. *Paroline v. United States*, 134 S.Ct. 1710, 1720 (2014). The burden is on the government to establish, by a preponderance of the evidence, the existence of a causal connection between the victim's losses and the defendant's conduct in order to meet the requirements of § 2259. *Kennedy*, 643 F.3d at 1262. If it is impossible to trace a particular amount of a victim's claimed losses to an individual defendant, then the sentencing court applying § 2259 should order a restitution amount comporting with the defendant's relative role in the causal process that underlays the victim's general losses. *Paroline*, 134 S.Ct. at 1715.

In addition, in *United States v. Galan*, the Court held that a person who participates in the distribution, receipt, or possession of child pornography cannot be required to pay restitution for losses caused by the original abuser's actions; instead, the losses must be disaggregated. 804 F.3d 1287, 1290-91 (9th Cir. 2015); *see also United States v. Grovo*, 826 F.3d 1207, 1222 (9th Cir. 2016). The *Galan* court provided examples of factors that may affect the apportionment, or disaggregation, in a particular case: "egregiousness of the original abuse; how a victim can (or does) cope with [the] . . . abuse when distribution of images does not follow; and the particular victim's own reactions to the various traumas to which the victim has been subjected." *Galan*, 804 F.3d at 1291. The court further noted that "precision is neither expected nor required" in apportioning the losses, and that "the ultimate question

will be a mix of 'discretion and estimation.'" *Id.* (quoting *Paroline*, 134 S.Ct at 1729).

Each victim claiming restitution warrants this court's individualized consideration and deserves the same consideration whether the only claimant or one of many. The potential aggregate cost to defendant due to the mass volume of his CSAM collection and commensurate large number of children he victimized is not a factor to be considered. § 2259(b)(4)(B)(i) (restitution order cannot be declined in light of defendant's economic circumstances).

Notably, as of December 7, 2018, and pursuant to the enactment of the Amy, Vicky, and Andy Child Pornography Victim Assistance Act ("AVAA"), certain amendments to § 2259's restitution provisions took effect. These amendments include the requirement that a court impose a minimum restitution aware of "no less than $3,000" regarding claims made by minor victims of child pornography offenses. § 2259(b)(2)(B). Because the defendant's offense conduct took place from October 2019 through September 2020, the amendments apply in this case.

### B. Restitution Claims to be Addressed

The government notified U.S. Probation and the defendant of it receiving several restitution requests from known series victims in this case, which are detailed in the PSR at paragraph 25. *See also* ECF No. 55-6. The government understands the defendant objects to five restitution requests that each exceed $3,000. For the foregoing reasons, the government asks the court to award restitution on behalf of each of these claimants for the amounts they seek as stated herein.

#### 1. "Violet" of the "At School" Series (1 video)

On March 17, 2022, the government received a detailed presentation from counsel for "Violet" of the "At School" series, in which Violet sought $10,000 in restitution from the defendant. ECF No. 55-6, at 288-556. The undersigned provided the complete request and all attachments to both Probation and the defendant. Violet's request for restitution in this case included the following attachments:

1) Report of Forensic Psychological Examination of Violet and CV of Randall Green, Ph.D.;
2) Violet's Mother's Impact Statement;
3) Executive Summary of Survivor's Survey, Canadian Centre for Child Protection;

4) American Professional Society on the Abuse of Children, Amicus Brief in Support of Respondent Amy Unknown, *Paroline v. United States*, No. 12-8561;

5) Testimony of Sharon W. Cooper, M.D., before the United States Sentencing Commission, 2012;

6) Cooper, S., et al., *Child Sexual Exploitation: A Comprehensive Review of Pornography, Prostitution, and Internet Crimes*; Layden, Mary Anna Ph.D., Smith, Linnea W. Smith, M.D., Chapter 7 *Adult Survivors of the Child Sexual Exploitation Industry: Psychological Profiles*;

7) Sharon W. Cooper, M.D. Report regarding Violet and CV

8) *United States v. Reynolds*, CR 12-20843 (EDMI, August 22, 2014); and

9) Declaration of Attorney's Fees and Costs.

ECF No. 55-6, at 288-556.

As noted in Violet's submissions, she was first sexually abused at her elementary school when she was still a minor. *Id.* at 290. Violet's attorney recently informed the government, which was then shared with Probation and the defendant, that Violet has now reached the age of majority and is aware of the circulation of the videos and images of her sexual abuse. The videos and images have been circulated online internationally. *Id.* at 290. As a young teenager, Violet was already exhibiting signs of self-harm and psychological concerns, despite not knowing at that point about the circulation of the videos and images of her abuse. The submission details the psychological problems that are expected with discovering that the videos and images are being circulated.

Since the filing of the final PSR, Violet's attorney informed the government of updated information that is relevant in assessing the suggested factors in *Paroline* for determining restitution. This information has been shared with Probation and the defendant. Violet's attorney indicated 820 orders of restitution have been entered on Violet's behalf. Violet has received $522,183.87 in restitution to date. Her attorney reported the number of submissions to NCMEC each year containing videos or images of Violet fluctuates from year to year, making it difficult to predict the number of future offenders likely to be caught let alone convicted for crimes contributing to Violet's losses. Regarding

the remaining factors, the government previously provided to the defendant a NCMEC report that details the number of videos and images of each known series victim that was found in the defendant's possession. The defendant possessed one video of Violet. The government agrees with the defendant that there is no evidence establishing that the defendant distributed that video. The defendant also had no connection to the initial production of the video.

As to disaggregation, the defendant argues that Violet's estimated medical expenses should be reduced by 50%, as was done with her therapy costs, to account for the original molestation. ECF No. 54, at 4. The defendant argues Violet's total projected loss would then be much lower. *Id.* However, the doctor's report makes clear that the report was based on "the cost of extra medical care necessitated by image exploitation disaggregated from the other medical needs" of Violet. ECF No. 55-6, at 442. Accordingly, reduction of the medical expenses by 50% on the basis of disaggregation is not warranted.

Violet's harm is ongoing, in part due to defendants like the defendant in this case perpetuating her abuse by collecting her images and videos. Based on the foregoing and Violet's restitution submission, an award of $10,000 is justified and sensible.

### 2. "**Lily" of the "Vicky" Series (2 videos and 2 images)**

On March 17, 2022, the government received a detailed presentation from counsel for "Lily" of the "Vicky" series, in which Lily sought $10,000 in restitution from the defendant. ECF No. 55-6. The undersigned provided the complete request and all attachments to both Probation and the defendant. Lily's request for restitution in this case included the following attachments:

1) Lily's Victim Impact Statement and Supplemental Statements;
2) Lily's Mother and Stepfather's Impact Statements;
3) Disaggregated Medical Cost Report and CV of Sharon W. Cooper, MD, FAAP;
4) Report of Forensic Psychological Evaluation of Lily and CV of Randall Green, Ph.D.;
5) Report of Vocational Evaluator and CV of Merill Cohen, M.C., C.M.D.S.;
6) Forensic Economic Analysis of Lost Wages Report and CV of Stan V. Smith, Ph.D., Forensic Economist;

      7)   Declaration regarding Attorneys' Fees and Costs;

      8)   *United States v. Donald Smith Reynolds* (EDMI No. 12-20843) Opinion Restitution to Victims (August 22, 2014) and *United States v. Bryan Scott McIntosh* (EDVA No. 14-00028) Memorandum Opinion re Restitution (October 22, 2014); and

      9)   Executive Summary, Survivor's Survery from the Canadian Center for Child Protection, 2017.

However, we noted that the attachments to Lily's restitution request did not make it into the final PSR. We would ask that the attachment to the PSR with the restitution requests be amended to include Lily's full restitution submission.

      As noted in Lily's submissions, the videos and images of Lily's sexual abuse are graphic and sadistic. *Id.* at 218. The videos and images that were found in the defendant's possession involved bondage. The depictions were "scripted to portray Lily as a willing and enthusiastic participant in her own abuse," which "exponentially multiplies her sense of humiliation." ECF No. 55-6, at 218. Lily knows the videos and images of her abuse are online and fears being recognized. She also continues to suffer from medical and psychological harm. The continued harm that Lily faces through defendants like the defendant in this case who are perpetuating the circulation of depictions of her sexual abuse is both real and unending.

      Since the filing of the final PSR, Lily's attorney informed the government of updated information that is relevant in assessing the suggested factors in *Paroline* for determining restitution. This information has been shared with Probation and the defendant. Lily's attorney indicated 2110 orders of restitution have been entered on Lily's behalf. Lily has received $2,840,908 in restitution to date, which is about half of her total disaggregated losses. As indicated in the NCMEC report, the defendant possessed two videos and two images depicting the sexual abuse of Lily. The two videos appeared to be duplicates but have different file names. The government agrees with the defendant that there is no evidence establishing that the defendant distributed these videos or images. The defendant also had no connection to the initial production of the video.

      Regarding disaggregation, the defendant argues that the loss attributable to medical services for

Lily should be reduced by 25% for disaggregation. However, the report regarding medical services makes clear that it relates to the "impact related to downloading, trading and possession of images." ECF No. Accordingly, that figure is already disaggregated and should not be further reduced.

Despite total losses calculated at approximately $5,700,000, Lily seeks a mere $10,000 from this defendant. Considering all of the information contained in Lily's restitution request, as well as the particularly graphic nature of the videos and images possessed by the defendant, the restitution request is reasonable and should be awarded.

### 3. "Maureen" of the "Lighthouse1" Series (1 image)

On November 1, 2021, the government received a detailed presentation from counsel for "Maureen" of the "Lighthouse1" series, in which Maureen sought $10,000 in restitution from the defendant. ECF No. 55-6, at 227-285. The undersigned provided the complete request and all attachments to both Probation and the defendant. Maureen's request for restitution in this case included the following attachments:

1) Maureen's Victim Impact Statement;
2) Report of Forensic Psychological Evaluation of Maureen and CV of Randall Green, Ph.D.;
3) Attorney Costs Declaration;
4) Canadian Centre for Child Protection Article *Phoenix 11 Call on Government to Do Moe to Eradicate the Spread of Child Sexual Abuse Imagery*, August 28, 2018; and
5) Additional Victim Impact Statement from Maureen.

ECF No. 55-6, at 227-285.

The image the defendant had of Maureen involved bondage, specifically duct tape. Maureen knows the images of her sexual abuse are being circulated. She has suffered immensely because of the continued circulation of the images like the one the defendant possessed. Her submissions detail the extensive psychological conditions that she is reeling with as a result of the continued viewing and circulation of her images and the costs associated with treatment for those conditions. ECF 55-6, 228.

Since the filing of the final PSR, Maureen's attorney informed the government of updated

information that is relevant in assessing the suggested factors in *Paroline* for determining restitution. This information has been shared with Probation and the defendant. Maureen's attorney indicated her total losses are approximately $1,600,000. Maureen has received $365,065.18 in restitution as of December 31, 2023. As indicated in the NCMEC report, the defendant possessed one image depicting the sexual abuse of Maureen, and the image included bondage and duct tape. The government agrees with the defendant that there is no evidence establishing that the defendant distributed this image. The defendant also had no connection to the initial production of the image.

Despite total losses calculated at approximately $1,600,000, Maureen seeks a mere $10,000 from this defendant. Considering all of the information contained in Maureen restitution request, as well as the low amount of restitution that has been ordered to date compared to her losses, the restitution request is reasonable and should be awarded.

### 4. "Cara" of the "MotorCouch" Series (1 video)

On March 16, 2022, the government received a detailed presentation from counsel for "Cara" of the "Motorcouch" series, in which Cara sought $5,000 in restitution from the defendant. ECF No. 55-6, at 1-45. The undersigned provided the complete request and all attachments to both Probation and the defendant. Cara's request for restitution in this case included the following attachments:

1) Cara's Victim Impact Statement;
2) Report of Forensic Psychological Evaluation of Cara and CV of Randall Green, Ph.D.; and
3) Declaration of Carol Hepburn.

ECF No. 55-6, at 55-6.

Cara is aware that the videos of her sexual abuse by her biological father are being circulated on the internet. As a result, she has suffered from "withdrawal, dysfunction in relationships, and suicidal ideation." *Id.* at 1. She also suffers with many diagnosed psychological conditions. The video of Cara's sexual abuse that the defendant possessed contained numerous still images of Cara as a toddler. As an adult now, she continued to suffer from the harm associated with the continued circulation of the videos and images of her abuse.

Cara requests $5,000 in restitution from this defendant. She has total reported loss of $125,000.

The defendant argues that the total loss should be reduced based on the forensic psychiatrist's calculation of $24,000 to $38,000 in costs for psychological treatment, as opposed to the $100,000 estimated by Cara's attorney for total cost associated with the treatment. ECF No. 54, at 7. However, Cara's attorney noted that the forensic psychiatrist recommended "re-evaluation in the near future when some of her immediate situational stressors are likely to be abated." ECF No. 55-6, at 2. Cara's attorney also factored in the costs associated with an anticipated vocational assessment, at the recommendation of the forensic psychiatrist. *Id.*

Cara's harm is ongoing, in part due to defendants like the defendant in this case perpetuating her abuse by collecting videos of her abuse. Based on the foregoing and Cara's restitution submission, the government asks that the Court award Cara $5,000 in restitution.

### 5. "Dipper" of the "Jester" Series (2 images)

On November 1, 2021, the government received a presentation from counsel for "Dipper" of the "Jester" series, in which Dipper sought $5,000 in restitution from the defendant. ECF No. 55-6, at 46. The undersigned provided the complete request and all attachments to both Probation and the defendant. Dipper's request for restitution in this case included a Report of Forensic Psychological Evaluation of Dipper conducted by Randall Green, Ph.D. The attorney Dipper noted that as of the date of the submission, November 1, 2021, she had just initiated her work on behalf of Dipper.

The defendant possessed 2 images of the sexual abuse of Dipper. The images appeared to be duplicates but with different filenames. The images depicted graphic anal penetration of Dipper by an adult male. Since the filing of the final PSR, Dipper's attorney submitted additional information to the government about Dipper's current condition. This information has been shared with Probation and the defense. The attorney noted the forensic evaluation conducted on Dipper was done before he became aware that the images of his abuse are in circulation. She also indicated Dipper is currently in a residential treatment facility as a result of two suicide attempts. She noted Dipper's costs have already exceeded the forensic psychiatrist's estimate. She indicated, to date, 8 defendants have been ordered to pay restitution to Dipper, and Dipper has received a total of $5,518.92 in restitution, as of December 31, 2023.

Based on the foregoing, and Dipper's submissions, $5,000 is reasonable given the total costs.

Accordingly, the government requests that Dipper be awarded restitution as requested.

In light of the above requests, the government seeks an aggregate restitution award of $49,000. If the court determines that it needs additional information prior to ruling on any of the restitution requests, then the government asks that a restitution hearing be set within 90 days of the sentencing hearing, without affecting any other component of the court's sentence and judgment, as authorized by § 3664(d)(5).

## IV. CONCLUSION

Based on the foregoing, it is respectfully requested that the Court sentence the defendant to 480 months of imprisonment with 10 years of supervised release to follow. The government further requests the court award restitution in the amount of $49,000.

Dated: January 24, 2024

PHILLIP A. TALBERT
United States Attorney

By: /s/ BRITTANY M. GUNTER
BRITTANY M. GUNTER
Assistant United States Attorney